# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

SARA K. DONAHUE,

    Plaintiff

v.

WASATCH PROPERTY MANAGEMENT, INC.

    Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Sara K. Donahue, by and through her attorney, Gretchen E. Lipman of The Law Office of Gretchen E. Lipman, submits this Complaint and Jury Demand against Wasatch Property Management, Inc. as follows:

## I. **INTRODUCTION**

1. On September 4, 2017, Sara K. Donahue was fired from her job as a Wasatch Property Management, Inc. ("Wasatch") employee. Ms. Donahue was notified of her termination four days after contacting Wasatch human resources representatives on August 31, 2017 to report unfair and discriminatory treatment and to discuss accommodations for her disability. Ms. Donahue was discriminated against and retaliated against on the basis of her disability stemming from a brain injury.

1

2. Ms. Donahue claims unlawful discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, as amended, (ADAAA), 42 U.S.C. §§ 12101, *et seq.,* and Section 504 of the Rehabilitation Act.

## II. JURISDICTION AND VENUE

3. This action arises under the Constitution and laws of the United States and the State of Colorado.

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Section 107(a) of the ADAAA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f) (1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-5(f)(1) and (3); Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981(a); 29 U.S.C. § 626(c)(1); and 29 U.S.C. §2617(a); and Section 504 of the Rehabilitation Act.

5. Venue lies in this judicial district under 28 U.S.C. § 1391(b) as all of the unlawful employment practices alleged herein occurred in the State of Colorado.

6. All procedural prerequisites for filing this suit have been met.

## III. PARTIES

7. Ms. Donahue is and was a Colorado resident during the time of the events described in this Complaint.

8. During all relevant time periods, Ms. Donahue was continuously employed by Wasatch Property Management ("Wasatch") and worked at least thirty-three (33) hours per week.

9. At all relevant times, Ms. Donahue was an "employee" of Wasatch Property Management as defined by the ADAAA and the Rehabilitation Act.

10. Ms. Donahue, who suffers from a permanent brain injury, is disabled, and alternatively was regarded by Wasatch Property Management as disabled within the meaning of the ADAAA.

11. Wasatch Property Management, Inc. is a Utah corporation licensed to and doing business in the State of Colorado during all relevant time periods.

12. Upon information and belief, Wasatch Property Management is engaged in an industry affecting commerce and employs fifteen (15) or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year.

13. At all relevant times, Wasatch Property Management was an "employer" within the meaning of the ADAAA and the Rehabilitation Act.

14. Wasatch receives financial assistance offered by the United States Housing and Urban Development Authority. Therefore, its employees are protected by the Rehabilitation Act of 1973, as amended.

## IV. FACTUAL ALLEGATIONS

15. Ms. Donahue was hired by Wasatch Property Management on March 7, 2017.

16. Wasatch terminated Ms. Donahue's employment on September 4, 2017.

17. Ms. Donahue worked as a leasing consultant at Wasatch Property Management's Trailside Apartment complex located in Parker, Colorado.

18. When Ms. Donahue started working at Trailside Apartments, there were four employees in the leasing office. At the time of Ms. Donahue's hire, Chastity Sanchez was the property manager and Ms. Donahue's supervisor.

19. Among other things, Ms. Donahue's primary job responsibilities included answering the phones, addressing walk-in tenants and customers, conducting tours to potential tenants, processing lease applications, initiating and evaluating credit report requests, and processing work orders for tenants.

20. Ms. Donahue received training to learn the specifics of the day-to-day operations at Trailside Apartments. Ms. Donahue made sure to get help if needed, asked questions, and paid attention to how her co-workers were handling tasks.

21. Ms. Donahue got off to a great start at Trailside, with at least five new leases signed in her first month.

22. Ms. Sanchez asked Ms. Donahue on several occasions to work extra hours and extra days to help get work done, which she did, especially after the financial manager, who also acted as a leasing consultant, quit in late May.

23. Despite following Ms. Sanchez's directives, Ms. Sanchez commented to Ms. Donahue that Ms. Donahue was not working hard enough or fast enough. Ms. Sanchez was rude and condescending toward Ms. Donahue especially when Ms. Donahue could not work additional days as a result of the schedule demands of Ms. Donahue's second job.

24. Ms. Sanchez told Ms. Donahue that she did not think Ms. Donahue could do the work that was asked of her, and that Ms. Sanchez would not be "brought down" because of Ms. Donahue. Ms. Sanchez told Ms. Donahue that Ms. Donahue was not smart.

25. Ms. Sanchez told Ms. Donahue that Wasatch was looking for a candidate to replace Ms. Donahue.

26. Because Trailside had not filled the vacant financial manager position, Ms. Donahue worked early hours and nights to complete work on leases. Unlike the other employees, Ms. Donahue did not have an office where she could work uninterrupted at times during the day.

27. Ms. Donahue asked Ms. Sanchez for time to work in an office two to three hours per week so that she could focus on processing leases. Ms. Sanchez said she would consider it so long as Ms. Donahue was not just "staring at the file."

28. In June 2017, Ms. Jamie Brown stepped in as the leasing office manager at Trailside Apartments.

29. On June 8, 2017, Ms. Brown gave Ms. Donahue a formal written notice in which Ms. Brown claimed that Ms. Donahue was not working fast enough. Ms. Donahue responded to the notice by working harder, but the office was short-staffed.

30. Ms. Donahue asked that Wasatch permit her to take training that was taking place on site. Wasatch denied Ms. Donahue the opportunity to participate in these leasing consultant training classes.

31. During this time, Ms. Donahue realized that a brain injury that she suffered as a result of an automobile accident years earlier was interfering with her ability to quickly learn tasks required of her at Trailside Apartments.

32. Ms. Donahue spoke to Ms. Sanchez and explained that her brain injury may be taking it longer for her to get up to speed on the tasks required of her.

33. After Ms. Donahue spoke with both Ms. Sanchez and Ms. Brown regarding the effects of her brain injury, Ms. Brown instructed Ms. Donahue to discuss the issue with human resources, which she did.

5

34. On August 1, 2017, Ms. Donahue spoke with Allison Hanson, human resources representative for Wasatch Property Management. Ms. Donahue requested that her employer and supervisors allow her additional time to be fully trained on certain functions of her position. Ms. Donahue was excelling at customer relations and handling tenant complaints, but feedback from her managers caused Ms. Donahue to believe her brain injury may be preventing her from quickly learning new skills relating to computer software.

35. After Ms. Donahue's discussion with human resources personnel regarding her need for accommodation, Ms. Sanchez's treatment of Ms. Donahue worsened.

36. On August 7, Ms. Sanchez and Ms. Brown presented Ms. Donahue with a written warning citing Ms. Donahue for incorrectly handling a lease application.

37. The description of the events associated with the lease were so inaccurate that Ms. Donahue refused to sign the written warning and instead submitted a written response to Ms. Sanchez. Wasatch did not respond to Ms. Donahue's statement.

38. On August 31, 2017, Ms. Donahue again contacted Wasatch Property Management human resources to report the discriminatory and unfair treatment of her, and to discuss her disability.

39. Wasatch's inaction and failure to accommodate Ms. Donahue's disability resulted in Wasatch's managers' impatient tirades, prevented Ms. Donahue from being acknowledged as a competent leasing consultant, and prevented the Plaintiff from fully reaching her potential at Wasatch Property Management.

40. Wasatch terminated Ms. Donahue instead of addressing her assertion that she was being discriminated against.

41. Ms. Donahue did not receive a response from human resources before she was terminated on September 4, 2017.

## V. <u>LEGAL CLAIMS</u>

**First Claim for Relief**
**Disability Discrimination in Violation of the ADAAA**

42. Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

43. At all relevant time periods, Plaintiff was a qualified individual with a disability within the meaning of the ADAAA. Specifically, Plaintiff's brain injury substantially limits her ability to process new information, concentrate (especially in noisy environments), and causes her to need additional time to learn new tasks, and qualifies as a serious health condition for which she was entitled to further training and assistance as defined by the ADAAA.

44. Despite her disability, Plaintiff was able to perform the essential functions of her position with a reasonable accommodation by way of an initial reduced work pace, additional time to become fully trained in the position, and uninterrupted time to complete lease paperwork.

45. Alternatively, Defendant regarded Plaintiff as disabled.

46. During all relevant time periods, Defendant failed to engage in the interactive process as to her brain injury in good faith and provide Plaintiff with a reasonable accommodation for her disability notwithstanding Ms. Donahue's requests for a reasonable accommodation, including but not limited to her requests for permission to have additional time to become fully trained in her position and additional time to learn the computer systems used in the office.

47. Defendant's actions were willful and related to Ms. Donahue's attempts to exercise her rights under the ADAAA. Defendant knew or showed reckless disregard for whether its conduct was prohibited by the ADAAA.

48. As a direct and proximate cause of Defendant's acts, omissions, and violations alleged above, Plaintiff has suffered considerable damages, injuries, and losses.

## SECOND CLAIM FOR RELIEF

## Retaliation in Violation of the ADAAA

49. Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

50. At all relevant time periods, Plaintiff was a qualified individual with a disability within the meaning of the ADAAA. Specifically, Plaintiff's brain injury limited her ability to work as quickly as other employees and benefitted from more time to train and learn new computer systems and processes.

51. During all relevant time periods, Defendant failed to engage in the interactive process in good faith and failed to provide Plaintiff with a reasonable accommodation for her disability notwithstanding Plaintiff's requests for a reasonable accommodation, including, but not limited to her requests for additional training to learn the specifics of the day-to-day operations at Trailside, a short amount of uninterrupted time per week to work on files, and additional time and patience from Ms. Sanchez and Ms. Brown in completing certain tasks.

52. Defendant engaged in a campaign of retaliation and took a series of materially adverse actions against Plaintiff in retaliation for her having engaged in such protected activity, including but not limited to implementing disciplinary actions against Plaintiff following her

requests for accommodations, and ultimately terminating her employment under pretextual circumstances in retaliation for having requested additional time and patience from her managers and other accommodations for her disability.

53. Defendant's actions were engaged in intentionally and willfully, with malice or in reckless disregard for Plaintiff's federally protected rights.

54. As a direct and proximate cause of Defendant's acts, omissions, and violations alleged above, Plaintiff has suffered considerable damages, injuries and losses.

## THIRD CLAIM FOR RELIEF

**Discrimination in Violation of the Rehabilitation Act**

55. At all relevant time periods, Plaintiff was a qualified individual with a disability within the meaning of the Rehabilitation Act. Specifically, Ms. Donahue's brain injury limited her ability to work as quickly as other employees initially, and she benefitted from more time to train and learn new computer systems and processes.

56. Ms. Donahue was able to perform the essential functions of her position with a reasonable accommodation.

57. Because of Ms. Donahue's brain injury, Wasatch regarded Ms. Donahue as having a record of disability. Ms. Donahue also has a physical impairment that substantially limits her major life activities including but not limited to quickly learning new computer systems and processes.

58. Wasatch discriminated against Ms. Donahue because of her disability in a number of ways, including without limitation, by:

    a. Failing to engage in the interactive process in good faith;

    b. Failing to provide Ms. Donahue with a reasonable accommodation for her disability; and

    c. Terminating Ms. Donahue's employment.

59. Wasatch's actions were engaged in intentionally and willfully, with malice and in reckless disregard for Ms. Donahue's federally protected rights.

60. As a direct and proximate cause of Wasatch's acts, omissions, and violations alleged above, Ms. Donahue has suffered considerable damages, injuries, and losses.

## FOURTH CLAIM FOR RELIEF

### Retaliation in Violation of the Rehabilitation Act

61. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

62. Ms. Donahue engaged in protected activity within the meaning of the Rehabilitation Act when she requested a reasonable accommodation for her disability by way of her requests for additional time to learn certain tasks.

63. Ms. Donahue's managers engaged in a campaign of retaliation and took a series of materially adverse actions against Ms. Donahue in retaliation for her having engaged in such protected activity, including but not limited to subjecting her to increased scrutiny and criticism for her workplace performance and ultimately terminating her.

64. Wasatch's actions were engaged in intentionally and willfully, with malice or in reckless disregard for Ms. Donahue's federally protected rights.

65. As a direct and proximate cause of the District's acts, omissions, and violations alleged above, Ms. Donahue has suffered considerable damages, injuries, and losses.

## VI. **RELIEF REQUESTED**

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief as allowed by law:

   a. Back pay, in amounts to be determined at trial;

   c. Compensatory and consequential damages;

   d. Liquidated damages;

   e. Injunctive and/or declaratory relief:

   f. Punitive damages;

   g. Pre-judgment and post-judgment interest at the highest lawful rate; and

   h. Attorneys' fees and costs of this action, including expert witness fees, as appropriate, and gross up of any award as an allowance for taxing consequences; and

   I. Any such further relief as the law of justice allows.

   **PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

   Dated this 7th day of June, 2019.

> Respectfully submitted,
>
> THE LAW OFFICE OF GRETCHEN E. LIPMAN, LLC
>
> s/Gretchen E. Lipman
> 1776 S. Jackson St., Ste. 710
> Denver, CO 80210
> (303) 861-3022
>
> *Attorney for Plaintiff*

**Plaintiff's Address:**
Sara K. Donahue
0051 Saddle Drive
Edwards, CO 81632